JOSEPH LAUR ET AL.

v.

THE PEOPLE, use, etc.

</div>

1. PRACTICE—PARTIES.—In a suit on a bond by the people for the use of H., guardian, etc., against appellant, judgment was rendered, but H. died before execution issued; it appearing that the estate of H. had no interest in the judgment, and that the ward had become of age, *held*, that although H. might have maintained the suit in his own name, and may have had the right to control the judgment during his lifetime and the minority of his ward, it does not follow that the judgment passed to his executor, and no

court should require the empty form of making the executor a party to the proceedings to collect the judgment.

2.  SAME—REMEDY AT LAW BARRED.—A court of equity having the *power* to declare an execution void or irregular and grant relief against it, and appellant having invoked that power, and the court of chancery having taken jurisdiction of his cause, he can not be allowed to now resort to a court of law for the same relief which he could then have obtained, if entitled to it, by presenting his claim.

WILKIN, J. It appears from the record in this case that appellee recovered judgment against appellant in the Circuit Court of Jefferson county on the 12th day of September, 1878, for $2,000 debt, and $604.67 damages and costs, to be satisfied on the payment of the damages and costs. That after the rendition of the judgment, and before this execution issued, the said Robert Hughes died testate, Robert Hughes, his son, being his executor. That after the death of Hughes, the said Margaret Hackett, now Margaret McDonald, assigned the said judgment to one Charles T. Moore. On the 24th day of July, 1884, execution and fee bill issued on said judgment by the direction of the said Margaret McDonald and Charles T. Moore.

On the 5th of June, 1885, appellants presented their motion to the Hon. Thos. S. Casey, in vacation, to quash said execution and to stay proceedings thereunder, and on that day it was ordered that further proceedings be suspended until the order of the court should be made upon said motion. At the following May term of the said Circuit Court of Jefferson county, the motion to quash the execution and fee bill was overruled and appellants prayed an appeal.

We find no written motion filed by appellants, and the grounds of the motion can therefore only be gathered from the notices given to the sheriff and appellees, and from the evidence introduced in support of the motion.

In the argument of the case here, but one objection is urged against the validity of the execution and fee bill, and that is the death of the said Robert Hughes, prior to their being issued. It further appears by a stipulation filed on the hearing of the motion. On the 16th day of September, 1884, the

appellant filed his bill in· chancery against Margaret Hackett and Charles T. Moore, to enjoin proceedings on said execution and fee bill, claiming that prior to the issuance thereof the whole amount of the said judgment had been paid. That upon issue joined on said bill, the court found that complainant was entitled to certain credits and ordered the same credited on said execution, and " declared the injunction granted them perpetual as to said sums, and dissolved as to the remainder of said judgments."

It clearly appears from the manner in which the suit was brought, the evidence in the case, and the agreement of parties, that the judgment rendered on the 12th of September, 1878, was for the sole benefit of Margaret Hackett, and that any balance remaining unpaid belongs to her or her assignee, and that the estate of George Hughes claims no interest whatever in it. It is also admitted that the ward for whose benefit said judgment was rendered became of age prior to the death of Hughes, her guardian.

No argument whatever is adduced to show that it was necessary that the executor of Robert Hughes should have become a party to the judgment under the provisions of section 37, chapter 77, R. S., nor why it was necessary to revive the judgment by *scire facias* in order to protect the rights of parties interested. Something is said in the argument about the rights of the estate of Hughes. It is agreed in the stipulation of the parties that the estate of Hughes has been settled and the executor discharged. There is nothing in the evidence to show that the estate at any time claimed an interest in the proceeds of the judgment.

Had the executor proceeded as counsel for appellant insist he should have done, and collected the judgment, he would have been bound to pay it over to Margaret Hackett. Additional expense would have been incurred, but no benefit would have accrued to any one.

Although Hughes might have maintained the suit in his own name and may have had the right to control the judgment during his lifetime and the minority of his ward, it does not follow that the judgment passed to his executor ; and

when it is conceded that the estate has no interest whatever in the judgment, that it in fact belongs to a person who is a party to it and who is living, no court should require the empty form of making the executor a party to the proceedings to collect the judgment, thereby passing the proceeds through the forms and subjecting it to the delays of administration, unless the rules of law imperatively demanded it.

We do not think this case falls within the provisions of Sec. 37, Ch. 77, R. S. That section provides that the collection of a judgment shall not be delayed "by reason of the death of any person in whose *favor* such judgment shall be," and is but a cumulative remedy with *scire facias* to revive judgment. The judgment was rendered in this case in favor of Margaret Hackett, and she is not dead. There was therefore no necessity for reviving it. In Freeman on Executions, Sec. 36, it is said that " the general rule in regard to revivor is that it is indispensable wherever a new party is to be charged or benefited by a judgment. When any new party is to be better or worse by the execution there must be a *scire facias* because he is a stranger to make him party to the judgment, as in the case of executors and administrators ; *otherwise when the execution is neither to charge nor benefit any new party.*" Margaret Hackett being a party to the judgment, and it being for her sole benefit, no new party being directly or indirectly interested in it, the execution properly issued without the executor becoming a party by filing his letters of executorship or reviving the judgment. The case is clearly distinguishable from those cited by appellant, in which it is held that the death of a sole plaintiff suing for his own use and benefit before execution issued, renders void the execution and all things done under it, unless letters of executorship or administration have been recorded in conformity to Sec. 37, or the judgment revived by *scire facias.*

The position of counsel for appellee, that the words " who sue for the use of Robert Hughes, guardian of Margaret Hackett, may be treated as surplusage" is not tenable, nor does the opinion in I. & St. L. R. R. Co. v. The People, 91 Ill. 452, support that view. That was an action to recover a

penalty under a section of the statute providing that the action should be debt, in the name of the people of the State of Illinois, *or* by any person who may sue for the same. The suit was in the name of The People, etc., *for the use of Maurice L. Whiteside.* The Supreme Court treated the words for the use, etc., as surplusage, for the reason, as stated, that " they add nothing to or detract nothing from the right to recover."

This action, as appears from the recitals in the judgment, was upon a bond for the payment of money, and we apprehend that it would be difficult to draft a declaration on such an instrument that would show a liability without alleging that the suit was for the use of some one. We have no criticism to make upon the manner in which the suit was brought. It was in conformity with the usual practice, and made Margaret Hackett a party to the judgment.

It is insisted that the chancery proceeding begun September 16, 1884, which resulted in a decree at the December term, 1884, is a bar to this motion. From the meager presentation of what was actually contained in the bill then filed, it is impossible for us to determine what was in fact decided in that case. There is nothing in the stipulation filed on the hearing of this motion from which we can infer that the validity of the execution was then called in question, except on the ground that it had been fully paid off. Enough, however, does appear, to show that that proceeding was between the same parties ; that it involved the same subject-matter, and that all the facts which now exist, existed then and were known to the complainant. That the principle of *res adjudicata* embraces not only what actually was determined in the former case, but also all other matters properly involved and which could have been raised and determined in it, certainly does not require the citation of authorities. The authorities referred to by counsel for appellant are in perfect harmony with this rule in so far as they treat of the doctrine of *res adjudicata.*

It is said, however, that a court of equity was not the proper jurisdiction in which to question the validity of this execution, on the ground that the plaintiff was dead when it was issued.

Laur v. The People.

The authorities cited do not support this position, though we have no doubt but that, if this was the only question involved, the proper remedy would be by motion, and a court of equity holding that the remedy was complete at law might properly refuse to take jurisdiction of the case. The same is equally true when relief is sought against an execution on the ground that the judgment has been fully paid off. Russell v. Hugunin, 1 Scammon, 562; McHenry v. Watkins, 12 Illinois, 233; and therefore, as far as we can determine from this record, there was no necessity whatever for resorting to a court of equity. It is admitted, however, in this case, that the chancellor did take jurisdiction, and having done so in obedience to an elementary rule of equity practice, he would have retained it to do justice between the parties, although he should have had to pass upon matters which alone would not have been cognizable in a court of equity.

It can not be seriously insisted that a court of equity has not the *power* to declare an execution void or irregular and grant relief against it to the fullest extent. Therefore, appellants having invoked that power, and the court of chancery having taken jurisdiction of his cause, he can not be allowed to now resort to a court of law for the same relief which he could then have obtained, if entitled to it, by presenting his claim. If we may judge of the scope of this motion and the reasons relied on below for quashing the execution, from the affidavit of appellant the payment of the judgment in full was insisted upon, thereby renewing, in part at least, the identical objections raised by the bill in chancery. The chancery proceeding was, in our opinion, a bar to this, and the judgment of the court below might be sustained on that ground alone. Again, appellant's negligence in presenting and urging this motion in view of the facts might well be held a waiver of the irregularity, if any existed in the issuing of the execution, and "an irrevocable renunciation of his right to quash the writ." Freeman on Executions, Sec. 76, and cases cited.

Affirmed.