[S. F. No. 7473.  Department One.—January 27, 1917.]

In the Matter of the Estate of LAURA M. N. HUNTOON, Deceased.

ESTATE OF DECEASED PERSON—PARTIAL DISTRIBUTION TO ONE OF SEVERAL RESIDUARY LEGATEES—CASH ON HAND.—A partial distribution to one of several residuary legatees of a portion of the cash in the hands of the executor, in part payment of such legatee's residuary interest, was properly decreed in this estate, it appearing that the remaining cash on hand was sufficient to pay the pecuniary legacies and the expenses of administration, and that it would be necessary to sell all the property of the estate and to make a final distribution of the residue in cash.

ID.—VALUATION OF PROPERTY—INVENTORY PRIMA FACIE EVIDENCE.—On the proceeding for final distribution, the valuation in the inventory is *prima facie* evidence of the value of the property of the estate.

APPEAL from a decree of the Superior Court of Sonoma County for the partial distribution of the estate of a deceased person. Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

Wilson & Wilson, and Rolfe L. Thompson, for Appellant.

James W. Oates, for Respondent.

SLOSS, J.—Laura M. N. Huntoon died, leaving a will which was admitted to probate in the superior court of Sonoma County, and letters testamentary thereon were issued to Ernest D. Woodman. By her will the testatrix bequeathed to her sister, Mary Emma Williams, the respondent herein, the sum of ten thousand dollars. There was a bequest of the same amount to Ernest D. Woodman, a nephew of the testatrix, and the executor of her will. The residue of the estate was devised and bequeathed in undivided seventh parts, one part to said Mary Emma Williams, one to Ernest D. Woodman and the others, respectively, to two brothers of the testatrix, to a niece, to the children of a deceased brother, and to the children of a deceased sister. Notice to creditors was published, and the time for presentation of claims expired without any claims having been presented against the estate. The executor filed an inventory and appraisement which showed personal property valued at $74,726.16, and real estate valued at $42,344.28, a total of $117,070.44. Among the items of personal property were two deposits in savings banks, aggregating $11,467.72. Mrs. Williams claimed the ownership of these deposits as a gift from the decedent, and commenced action against the executor and the savings banks to recover said deposits. These actions are still pending on appeal. The money legacy of ten thousand dollars to Mrs. Williams has been paid by order of court. The executor's first annual account was settled and allowed on June 8, 1914. It showed payments of one thousand dollars to the executor on account of his commissions, and of one thousand dollars to his attorneys on account of their fees.

On March 9, 1915, Mary E. Williams filed her petition asking for partial distribution to her of the sum of something over eleven thousand dollars, which, as she alleged, was on hand in cash, and could be distributed to her without loss or injury to the creditors of the estate. Woodman, appearing as residuary legatee and devisee, opposed the application. The court made its decree, reciting that the estate

is of the value of over one hundred thousand dollars and is but little indebted, that all claims have been paid, that the executor has in his hands the sum of twenty-five thousand dollars in cash that is not needed in the administration, that the interest of petitioner as a residuary legatee will be more than eight thousand dollars, that the estate is in litigation and will not be ready to finally settle and distribute for considerable time, and that eight thousand dollars can be paid out of the estate to the petitioner on account of her interest as residuary legatee without loss or injury to the creditors of said estate or to said estate. The decree accordingly distributed such sum of eight thousand dollars to the petitioner on account of her interest as residuary legatee. From this decree Woodman appeals.

It appeared in evidence that a part of the personal property of the estate had been converted into cash. Certain shares of stock had been sold and some promissory notes collected. At the time of the hearing the executor had on hand about twenty-five thousand dollars. It is contended that the court was not justified in finding that this sum of money was ''not needed in the administration.'' The appellant claims that out of this sum his own cash legacy of ten thousand dollars should be paid, and that there is a mortgage debt of ten thousand dollars on a parcel of real property belonging to the estate. But the mortgage debt had not been presented as a claim, and while it still remained a lien on the land, the executor was under no obligation to pay it out of the estate. In fact, he testified that in his judgment it would not be advisable to pay the mortgage. So far as the appellant's legacy is concerned, he has not applied for an order directing its payment. But assuming that it should be paid, there will still remain on hand the sum of fifteen thousand dollars, and the payment of eight thousand dollars to the respondent will leave more than enough cash to meet all probable expenses of administration.

The appellant also contends that the finding that the estate is of the value of over one hundred thousand dollars is not sustained by the evidence. But the inventory shows a value of over one hundred thousand dollars, after deducting the deposits in litigation. Furthermore, it was testified that the income of the estate during the two years prior to the filing of the petition for partial distribution had been about

five thousand dollars per annum. It is true that the executor testified that the real property had depreciated in value. The valuation in the inventory was, however, *prima facie* evidence of the value of the property (*Estate of Carver*, 123 Cal. 102, 106, [55 Pac. 770]), and even though some allowance were made for the decline in value of the real estate, the evidence still warranted a conclusion that the residue would amount to enough to make it proper to distribute to the petitioner the sum of eight thousand dollars without affecting the shares of the other residuary legatees and devisees. Her ultimate interest will undoubtedly be worth considerably more than this sum, and we see no objection to the partial distribution to her on account. It does not appear that such distribution would be in any way injurious to other persons interested in the estate, as was the case in *Estate of Glenn*, 153 Cal. 77, [94 Pac. 230]. There might be some ground for objecting to the payment of one residuary legatee and devisee in cash, if the others would thereby be compelled to take their shares in undivided interests in real property. No one of the beneficiaries to whom the residue is given has a right superior to that of the others. But the court was warranted in inferring from the evidence here introduced that it would be necessary to sell all of the property and to make a final distribution of the residue in cash. This being so, it was not improper to allow the petitioner, who had been diligent in the assertion of her rights, a portion of her interest out of the idle cash on hand.

The decree is affirmed.

Shaw, J., and Lawlor, J., concurred.